May it please the Court. Good morning. George Poisson on behalf of Mr. Plansencia. What's clear in this case is Mr. Plansencia is not eligible for parole until he completes 35 years of the sentence imposed of his 35 to life. And it's clear also from the magistrate's finding that Mr. Plansencia, had he known that he was going to serve a full 35 years before first being eligible for parole, wouldn't have entered the plea and wouldn't have taken the plea bargain that was offered. He would have been subject to mandatory life imprisonment if he were convicted, correct? Well, Your Honor, yes. As a 17-year-old, he faced life without parole or, in discretion of the Court, life eligible for parole. And that was an issue that was not briefed in any of the pleadings before the Court, either the District Court or on appeal. But Mr. Plansencia, pursuant to Penal Code Section 190.5, had the ability to be sentenced to life with parole, even if he was convicted of a special circumstance. So, yes, one of the potential penalties was life without parole. In this particular case, that was discussed with Mr. Plansencia. But the plea bargain, as explained to him by his counsel, erroneously said he was eligible for parole after 17 years. And now, at that point in time, everything, I believe and I respectfully submit, the things got turned around and the focus was on the extent of the error rather than the error itself. The magistrate judge found that Mr. Segal advised Mr. Plansencia that he was eligible for parole after 17 years. And that was what Mr. Plansencia believed. And then the – there was a discussion at a later time regarding the determinant part of the sentence and how that might affect the parole eligibility. However, that was never really adequately explained to Mr. Plansencia. Will your argument be different today if he were told that he would be eligible for parole after 23 years or 25 years? Well, if the – if he was eligible for parole in 17 or 21 or 23, then the issue would be substantially different. Then the question is, is that – is that substantially different from 17? But really, the focus is on the 35. And that is what he is actually facing right now. And there's no dispute as to that. He's facing – Can you clarify that? I have a question about that. Clearly, on the 25 minimum, there was error because there was an affirmative statement that the magistrate found that it was – he would be eligible on that first count in 17 years, when in fact he should have been told it would have been 25 years. That's correct? An affirmative statement? Yes. Now, with respect to the second count, the attempted murder count, the district court found that there was no finding of an affirmative misrepresentation, as I understand it, as to parole on that. There may be an absence of any statement, but there wasn't any affirmative statement. Do you disagree with that? Well, I do disagree with the district court's finding, because the magistrate court found that Mr. Placentia was told he was eligible on his sentence for 17 years. And the magistrate judge conceded that there was discussions regarding the attempted murder and the arming enhancement, but it wasn't clear from – in the opinion or from the testimony of Mr. Siegel what that meant exactly. Now, the district court found, and I submit without factual support, that Mr. – that Mr. Siegel explained to Mr. Placentia that he would have to do an additional 10 years on his parole eligibility, but that wasn't from – that wasn't what Mr. Siegel had said. In fact, he had – the attorney said, I advised him he had to do the full 35 years on the sentence, and the magistrate judge, after listening to all the testimony in this case, found that that wasn't correct and discredited the attorney's testimony. You have a finding of an affirmative misstatement as to the 25, that the lawyer should have told him that on the one count, he would have to serve 25 years before he was eligible for parole, rather than 17 or 18 years, right? You have an affirmative finding of an affirmative misstatement. You don't have a finding of an affirmative misstatement as to the 10 years. Is that – is that true? No. It is – and I parsed this out, and I think it's necessary to the court to understand this. I do understand a lot of things. I don't need to have other things explained to me. I'm asking a question about the record. It's capable of a yes or no answer. Well, the record – And you can explain the consequences of your answer, if you wish, but I'd really like to have an answer to my question. Yes. And I – my – the answer would be no, because – No. No, there is – No, there's no – there's no finding specifically as to the affirmative misstatement. Okay. Now, you can – you can talk about what that means, but let me sort of phrase a question based on what I think it means. Don't our cases require, in order to show ineffective assistance of counsel at the pre-stage, don't they have to show – don't you have to have a finding of an affirmative misadvisement? Yes. Most of the cases – yes, the cases have – they have found a gross mischaracterization of – And I think I heard you say you don't have that here. At most, what you have is uncertainty about how he was advised, and more likely what you have is he simply didn't give him advice. Maybe he should have, maybe your client was entitled to advice, but the lawyer just didn't give him adequate advice about it. And I think that's probably what the record supports, but is that enough for – under our cases for a finding of a stricter violation? Yes, I believe it is. Okay. I believe it – the – if we look at it from what the attorney should have said, he should have said, Mr. Plisenski, you're going to do 35 years before you first become eligible for parole. You know, I understand what you think the attorney should have said, and I tend to agree with you that a good lawyer would have said it, and a competent lawyer would have said that, but I thought our cases require an affirmative misadvisement, not simply not giving advice when advice should have been given, but I thought it required an affirmative misadvisement. If that's the case, then it seems to me you fall short. Is there any case that leaves room for conduct that is better than affirmative misadvisement to be nevertheless found to be relatively strict? Well, I would submit that there's an affirmative misadvisement as to the parole eligibility for the first-degree murder case, and the magistrate judge – What if he said nothing at all about it? He'd said, look, on this count, you're going to get 17 years. Well, that's what the magistrate judge found that – You've got this other count, but I'm not going to tell you what the consequences are. He just said, look, you've got another count. I'm just advising as to one count. I'm not telling you anything about the other count. Well, the failure – Let's say he'd said that. The failure to advise on how that affected his parole eligibility is an affirmative misrepresentation. It is an omission that is – it's like telling someone, well, I'm not going to tell you exactly what this penalty is. It'll add some time, but I won't tell you what it is. I mean, he has – an attorney has an affirmative duty to tell the client how that affects this. No doubt in a malpractice case he might well be found to have committed malpractice in failing to do that, but I thought for purposes of Federal behaviors, you need an affirmative misadvisement, which I don't think there is here. I – you can talk to me about the cases if you think there's any room for something less than an affirmative misadvisement, but I thought this thing was pretty clear. Well, if we just look at the most recent case, U.S. v. Davis, I mean, the person was – they talked about probation and he wasn't eligible for probation and he received an eight-year sentence. And Chacon v. Wood, the discussion was eight to ten months pro-eligibility and the actual pro-eligibility was 60 months. So you do – But I thought Chacon was clearly a case where he was told you're going to get three months. He was affirmatively told three months when the correct answer was ten months. This was not a case where the lawyer said, look, I'm not going to tell you what it is or the lawyer forgot to tell him what he would serve or anything else. It was an affirmative misadvisement. I thought that's what you needed. And that's what – I submit to the court that that's what we have in this case, affirmative misadvisement saying you're going to do 17 years and he actually had to do 35 years. Now, the difference – I mean, the district court said, well, you know, we have this – there's only an eight-year discrepancy. You might have had that case if the finding had been that he said you're going to do 17 years and nothing else, but the finding clearly is that he was told that he was going to do something on the second count. So it was not like he was told a categorical number and he said this is going to be the limit. He was told this and the other. Now, probably a good lawyer, a competent lawyer, should have told him more about the 10 years, but I just have difficulty finding that that's an affirmative misadvisement. Was there any – was there any advisement as to parole on the second count or was there advisement as to the term of the sentence itself? Well, that's the distinction. Again, there was no advisement on parole and how it affected his parole eligibility. That's – as Judge Kaczynski says, you're explaining. I'd like to know what the answer is. Is your position that he was told something about the second count per the magistrate judge's findings, but it had nothing to do with parole? It had to do with the amount of sentence, additional sentence he could get on the second count? Yes, that's my position. All right. Thank you. You have a mixed bag. He was misadvised in terms of the 25 to life, and then on the second aspect, he was just told the sentence but not the parole implications of that. That's basically factually what we have. Yes. All right. Well, do you think that if you just take the 17 years, that was misadvice compared to the 25 to life, do you think that that in itself would be sufficient under the case law to constitute improper representation? Yes, I do. And I think it's – I think that under the case laws, the misadvisement, as it stands for the saying that you first agree you're 17 as opposed to what he actually had to do, that is sufficient under all the cases that – out of the Ninth Circuit. That's a much tougher case for you to win. I mean, you might, but that's – I mean, I realize you might win that way, but it's obviously much better for you if you can shoehorn it to a 17 or 18-year misadvisement than an 8-year misadvisement. And I would concede that the 17 – No, there's nothing to concede. It's obviously a much bigger number. It's – you know, obviously it's better. Well, I've argued both. Oh, I understand. I'm aware that you've argued both. It's – well, it's a mixed bag. What I'm puzzled by is there seems to be the need for some line drawing here, you know, the nature of the misadvisement, the extent of it. How do you draw a line in these types of cases where it falls on this side or that side? I would urge this Court not to draw a line because the problem is that you're – if you make a distinction between 8 and 9 years, what's the basis for making a distinction saying 8 is not enough, 9 constitutes gross? It sounds like a conversation between Abraham and God, right? Yeah. So, but – I mean, you have to draw a line somewhere. God drew the line at 10. I think the line is – the focus is on the prejudice, which is in this case, had he known that he would have to do with 35 years, he said no. It's a hard thing to argue, but, you know, obviously even a single day in prison that is not deserved is a great injustice. I mean, it's very hard to argue about these things, you know. Even a single day spent behind bars when it shouldn't be is terrible. But you have to draw the line somewhere. I mean, if 9 years is okay, then you look at 8 years, that's okay, and then maybe 5 years is okay, too. 5 is not that different from 2 years, and 2 years is not different from 2 months. I mean, you know, in principle, there is no logical stopping point. Don't we also look at a proportion of the sentence? Don't we say that, you know, not just absolute numbers, but also how the sentence – the two sentences compare to each other? And, you know, 8 years out of 35 is not as much as, let's say, 9 years out of 10. The two numbers may seem very close, but to me, they strike me as very different. Well, yes, but, I mean, if we look at some of the cases, I mean, the Chaconne v. Wood where the court said, well, the difference between, you know, 5 years and a year, I mean, it's only 4 years. So I guess you could say, well, I mean, that's not enough because the sentence – Let's say 400%. You could also – there's another way of phrasing it. It would be saying, you know, you went in thinking it would be, you know, one year you got 5 times as much, that's a 400% increase in the sentence. If you apply that standard to your case, then your client wouldn't be misadvised unless he got parole in 175 years or something like that. But the focus in that case would be the amount – you're always focusing on the amount of the error of counsel. And the question is, is that – and I believe that's a wrong focus. Do you really think this is something that will help your client? I mean, from the looks of it, the state has – have and probably still has a slam-bang case against them. There's no doubt he was there. There's no doubt that he was involved with this other boy who got life without parole. There's no doubt that he did it once and then 3 days later he does it again. So it's very hard for him to claim, oh, I didn't know that my partner would pull the trigger. The first time he might say that it was a big surprise to me, you know, I should somehow get out of my case of liability. But it's very hard to argue that a second time after – from, you know, they've got witnesses, they've got fingerprints. And the state is quite capable and willing to try people 10 years and 15 years and 20 years after the crime if they've got the evidence. I just don't see how this is going to help your client. Well, Your Honor, I think the magistrate judge reviewed that and set forth in the record certain things I think we could look at. We could look at in terms of the murder – it's clear that the defendant wasn't the actual shooter. And in terms of the first murder – It's also clear that in the California law it doesn't much matter. Except maybe for the death penalty. But it might matter for death penalty purposes, but we're not talking death penalty here. But I say that because of the issue regarding fingerprints. But in the first murder, the eyewitness to – one of the eyewitnesses to the murder said there was only one person, one assailant, and didn't identify a second person. On the second attempted murder, there was no identification of defendant. And the statement that he gave, the confession, the first part was un-Mirandized and subsequently Miranda. He was subsequently given Miranda. So under case law, there is a good chance that a statement can be suppressed in the entirety. And then the question is, with the lack of identification, is it a defensible case? I mean, I've tried less defensible cases. Let me get back to line drawing, if I may. We have to review this as a habeas case under AEDPA. We agree with that, right? If we are talking about the degree of difficulty in drawing the line here or there, how do you overcome the deference that's due under AEDPA? Well, there was – the district court dealt with that. There was no deference. There was no evidentiary hearing in the state court. It was a denial, summarily denied. There was no – there's no deference to be given the ruling itself. You have a determination on the merits, even though there may not have been any articulation by the state court. And it seems like AEDPA has some place to play in all of this. It was a petition filed in the California Supreme Court, denied without hearing, denied without comment. It was a – The only consequence of the fact that there was no hearing is that we can make up our own facts. We can hold an evidentiary hearing, and we come up with a factual record, which we did, and the state doesn't materially dispute that factual record. We still then have to take this factual record and look at the state court's ruling and see whether the state court's ruling is unreasonable under AEDPA, given the facts as we have found them, because the state didn't find them. I think that's what Judge Block was asking, and I think that's a telling question for you. Well, I would urge, as the district court found, that there should be no deference. I mean, the district court, in making its determination that evidentiary hearing was warranted in this case, did not give deference to the state court ruling. Certainly not on the facts. And we are – I think we have all accepted the facts, including, I think, the State. The fact is found by the magistrate judge. But say, okay, given the facts, given that there is this discrepancy of, let's say, eight years, is it unreasonable for the State to say that that is not an affirmative misadvisement in light of all the circumstances? Don't we have to defer to the state court on that issue? Well, I would urge the court not to defer to any implicit finding made by the court, because there was no express finding of that in the state court record. And to give – I mean, if we were to give deference to a summary denial, then there would be no Federal habeas. We would – we would – You get that all the time, if it's a decision on the merits. It's true. And I don't deny that. I mean, I'm aware of the case law, and it's cited. But the question is, in this case, is that – I mean, there's – it's just a denial. There wasn't – they didn't articulate the reasons why. And if we were to imply that they made – they determined all the issues based on their denial, that would be contrary to most precedent regarding the – how we consider the California Supreme Court denials in this district. So I would urge the court not to do that. Okay. Well, I think you've had more than your time. Yes.  We'll hear from the State. May it please the Court. Edpa is critical to this case. And the reason it is, is because when – Could you pull that microphone up just a tiny bit? How about closer? Would that help? We short people always have to do that. I apologize for my height. It's something I can't fix. I know the story. It's just – Let me start again. Please. The Edpa is critical in this case because there was a decision on the merits, both by the California Court of Appeal and the California Supreme Court. It wasn't a lengthy one. It was a pocket denial. But the California courts apply the Strickland analysis and are well aware and have applied many times the Hill v. Lockhart analysis. And Hill v. Lockhart provides the answer in this case. Hill v. Lockhart basically says, Strickland analysis applies whenever the claim is misadvised during a plea situation. Here we have never decided, and we don't decide now, whether misadvice on a collateral consequence will support ineffective assistance of counsel in a plea. And they resolve the case then on the basis that there had been no assertion of prejudice. Counsel jumps right to prejudice, right? Right. I want to stop you to talk about this issue. You want to talk about it. Sure. And whether this applies at all to parole. And you said, well, to collateral consequence. Hill was a parole case. Hill is actually very similar to this case. If the court had found in Hill that that collateral consequence would support. What was the collateral consequence in Hill? I believe it was a misadvisement about parole eligibility. I think it's very similar to this case. But I think. They resolved it on prejudice. Right. So there's a determination in Hill that we don't have to decide, i.e., there is no U.S. Supreme Court authority holding that collateral consequences will support relief. They didn't have to go there because there was no even claim of prejudice in that case. So. I'm sorry. Or did they reject the idea? They did not reject the idea. But the question under EDBA. Preserved it. So is it your position that if the Supreme Court expressly reserves an issue, you don't look to subsequent Federal Circuit courts to determine whether, under at least an unreasonable application of existing Supreme Court law, that you could conclude that notwithstanding that they reserve the question, it is that it's contrary to what is a reasonable application of Supreme Court law? Our position is in two parts. One is, of course, we'd be delighted to have you look at your own circuit authority on collateral consequences because we believe that supports our position. But preliminary to that and responsive to your question, what we have here is no direct ruling from the U.S. Supreme Court. Except that. And in order to determine what's reasonable, yes, we do look to the circuit authority to help determine that often. It's often quite helpful. But in terms of. So in this case, you have what is, everybody agrees, is a clear error on the part of trial counsel and misadvisement on the 25-year. On the indeterminate term. Right. So then what we're hung up on is whether or not the misadvisement of that is somehow mitigated by the fuzzy facts, if I can characterize them, as to what then was done with the second count. And under one set of assumptions based on what the magistrate judge seems to have found, you can correct me if I'm wrong, but that the magistrate seemed to find at most that there was some discussion about doing time on the second count. The question then becomes whether or not putting that on the table so that it's clear that Placentia knew that he was looking at doing time on another count, whether there's anything in that that would suggest that he should have understood there could have been parole consequences there, or whether, as counsel for Mr. Placentia is arguing, having stated affirmatively a bald mistake on 17 years, that's in effect like in the law of misrepresentation. Once you've made an affirmative misstatement like that, then leaving out, not then going on to address the other aspect that qualifies the 17 years, is tantamount to another affirmative representation by omission. What do you think about that? The Court, as Justice Kuczynski pointed out, never found that there was an affirmative misrepresentation about the 10 years. I'm accepting that. And the evidence is that while counsel may have been somewhat confused about indeterminate terms, the ones that are something to life or something to something, about exactly the advisement to give on parole there, he was not at all unclear about determinate terms associated with murder counts. And there's considerable discussion about Penal Code Section 2933.1 and .2. So the distinction here, and I think that's what the district court picked up on when it rejected the magistrate's recommendation, was that counsel understood and advised. Understood, but isn't the question what Mr. Placentia understood? Did Mr. Placentia, is there any evidence that Mr. Placentia was told that to qualify the misadvice of 17 years, that there was other parole prerequisites associated with the second count? Absolutely. And Mr. Siegel goes through step by step how he advised, and that he was reaching an understanding with his client. He states very specifically when he testifies that he explained that he would serve all the time. He would serve either 6, 8, or 10 years on the attempted murder before the clock even began to run on the murder count. And that statement is credited at least by the district court, and the magistrate didn't find anything to the contrary. Do you have any idea where the 17 years may have come from? I think I have a suspicion, but I wonder what your understanding would be of that. We think it may have come from an out-of-state case that might have been read by an appellant. But there has been a development in the law from the sort of what we call a one-third off for good behavior or the two-for-four credits on cases that ---- Let me see whether I might be correct here. Yes, please, Your Honor. 35 years he has to serve. That's under California law, correct? So there is no parole opportunity here. He has to serve at least 35 years. That's correct. But it's because of the nature of these particular charges. Yes. Under California law, is it normal that you get one year for every 50% off every year, 50% off for all year service? And he had been in jail for one year, so he had 34 years left to go. And if that were the case, then the 17 years would make sense that he could have been advised or disadvised that under the California law that the lawyer thought was applicable, that he would come under that umbrella, where in truth that was not applicable and he would have to serve the 35 years. Does that make sense to you? That's clever, but there's an incorrect assumption there which I want to correct. California's system is for every four days you serve, you get two additional days credit. It works out to one-third of the time, not one-half. And the eight years is closer to a third of 24 years, having served one year, and getting down to just talking about the murder count, than it is to having any effect whatsoever on the determinate term. The year from the 25 years. Think of that. You get one-third off at the very least. That's the only way I can think of it. And it completely, and it doesn't undermine this, our view that the 10 years he believed he would serve all along. Putting aside that for the moment, what do you think about the misadvice about the fact that he'd be eligible to have one-third off when that was not the case? The distinction we'd like to draw there is between direct and collateral consequences. There's no dispute at all that this defendant knew that he was going to serve up to the rest of his life in prison, and he accepted that in order to get the possibility of parole rather than the LWAP sentence his co-defendant got. There are parole ineffective assistance misadvice cases. There are a number of them. They're not just questions about predicting what your sentence is going to be. We have a parole situation. You talk about collateral consequences. Are you suggesting that there never could be ineffective assistance because you're dealing with collateral consequences? In this district at least, Your Honor, we win the cases where the consequences are collateral, and we only lose the cases where it's a misadvice as to the total sentence. So it's a very important distinction here. But there are other districts which do accept the concept of an effective assistance counsel in collateral consequences cases, specifically in parole cases. It may be true in the Tenth Circuit, for example. There's nothing in California that deals with that at all? We went through in the briefs fairly carefully. In the typical cases, the Sofenthavong v. Palmatier case, typical, very expressive of the situation where there's an inapplicable prediction about the parole consequences, and that is deemed collateral. Whereas in AIEA v. Sun, which establishes the standard, the people of the State of, I can't remember now if it was Oregon or California, but are not successful there because the misadvisement is as to the length of the sentence itself. I take it this was not discussed of any length of the pre-colloquy. Well, what's interesting, and if the Court has the inclination, the one more document I would request that they read is actually Respondent's Own Traverse. The plea colloquy makes it very clear that there will be no sentence reduction credits in this case. Or that they'll be reduced, severely reduced. For legalese of the first time, I didn't have any idea what it meant. It probably means something to the lawyers who practice in this area, but I had no clue what it meant. But there was no talk about parole eligibility date or anything of that sort. I think it was told this is your sentence, this is your maximum sentence. And because of the nature of the crimes, right, no credits or reduced credits. There was no advisement of any sort as to parole eligibility. Other than this talk about you're not going to get these kinds of credits. Right. And in the Traverse what Appellant basically responds is, sure, the Court told me, but I'm claiming ineffective assistance of counsel. I think that's an admission. And that's, you know, before he's represented and before we had the evidentiary hearing. But he clearly admits he was advised. It was not a very clear statement from the Court. You know, you are not going to be eligible for parole for 35 years no matter what. There's nothing like that. What it says is here's your sentence and there are no credits to reduce it. They're two sides of the same coin. The only thing that brings parole closer is credits in addition to you serve one day, you have a day behind you. And what the Court, you know, was trying to convey at least and we would assert it does is that there are no such credits. Here's how the Court conveyed something here. You tell me at the record at pages 36 and 45 the Court informs Placentia that his, quote, in-prison custody credits would be reduced. Do I have that correct? That's correct. What does that mean? I don't even understand what that means, let alone Placentia. And the next question is do you understand that? And Placentia says yes. Well, he's told to say yes. He knows that if he doesn't say yes, he doesn't get his deal. By the time the defendant is standing there ready for a plea, you know, he's pretty much. . . But at one point he says no. If he's told, you know, the thing that's something in there that says, look, you've got to serve 35 years no matter what before you even have a shot at blue sky, I mean, that's something you can understand. But, you know, this sort of phrase in a backwards way, you know, I have trouble understanding what's going on. Well, but let's look at the rest of that hearing, though. At another point he's asked, you know, do you understand that you're waiving your constitutional rights? And he says no. He doesn't understand, and so it's explained to him, and he comes back, and then he does understand. He knew he was allowed to say no and have things explained to him. He did it in this very hearing. So you're not going to get any credits. Do you understand that? Are you getting reduced credits? Do you understand that? Yes is a meaningful answer in this context. On your state of mind, as the magistrate judge found, is that you know you're eligible. You think you're eligible for parole in 17 years. All the rest of that is background noise for the defendant, right? He's looking at the package that he thought he signed on to, so credits and all of that stuff. But that makes the plea colloquy completely meaningless, and we don't think a plea colloquy is completely meaningless. We think it's there to correct potential misadvisements, and that's exactly what it's for. My mind was for the magistrate judge's finding. So whatever we can make of that, we have to accept that his state of mind, if we credit the magistrate judge's finding, having heard the witnesses testify, was that whatever the lawyer like gobbledygook in what the judge was telling him, he's relying on his counsel to tell him out of all of this, when am I eligible for parole? That's what I care about, and I'm going to rely on my lawyer. That's what the lawyer's job is. That's why we're talking strictly. I totally understand that, but to have the plea colloquy have any meaning, then when you ask questions like do you understand and get it answered, that must also have a meaning. And when you ask have there been any other promises made to you, and you say no, that must have meaning as well. So what? How do we weigh that against the misadvisement that was clear in his mind? None of that contradicts the notion that he thought he was getting out in 17, would be eligible to get out in 17 years. But might not get out forever, and that gets us back to collateral versus true consequences of a plea. You also have the fact that his lawyer, he has this, presumably understands what the judge is saying, at least as much as the defendant, maybe a little more, and he doesn't say wait, stop. I just realized I gave my client some bad advice. I need to go back and explain this to him. Now that the court has said, lawyer stands mute. Well, the lawyer to this day believes that he correctly advised him. It's just that the magistrate found differently, so I'm not sure what to draw from his failure to object when the court correctly advised him as well. I think it was a matter of law what we have to draw, the inference we have to draw. The lawyer lied, as the magistrate found, we're bound by that. And what we have to then say, so there he is at the hearing having misadvised his client, knowing he's misadvised his client, the judge then says something different. I realize this is a construct, and we don't know what happened, but this is how the law works. We have findings. The implication is that he's standing there knowing full well that he gave what advice he gave his client, maybe under a mistaken view of the law, not maliciously, and then the judge explains to the client the true state of the fact, and then it seems to me he has a responsibility to start the proceedings and say, well, I made a big mistake. I told my client he'd be out 17 years, 27 years, whatever it is, and it turns out it's 35 years. I better advise him again. So, you know, that's a structural issue, too. I'm not sure what to do with the construct that differs from how the lawyer perceived the situation at the time. But if the court correctly advises and the client says right then and there, I understand, and then there are further meetings with the client, there is a probation hearing. My God, all of a sudden my client is so smart, you know. He seemed like a sort of dumb 17-year-old just a couple of days ago when I explained it to him, but now he heard this, you know, almost totally unintelligible thing from the court, and he understands. You know, he got really smart overnight. Well, but Mr. Siegel says that he went through the probation report line by line, and there are several places in the probation report that make it clear. He's found to have lied. That's the problem. He's found to have lied, so we have to impute to him. I mean, I'm not saying he did lie. I don't have anything against Mr. Siegel. The finding is that he lied. So we have to think of him standing there in the dark with his client having the state of mind that the magistrate found him to have, which is that he gave bad advice. He knew he gave bad advice. Not that he thought the advice was wrong. I'm not saying that, but that he knew what advice he had given, and then when the judge explains it in court, he doesn't, you know, he doesn't sort of say stop. I may have given advice. Had it not happened at the plea-taking itself with months until the sentencing hearing and with it very clear then, had there been a perception of misadvice at the time, had there been a misunderstanding, the opportunity to make that point is the motion to withdraw the plea at the point at which it's very, very, very clear at the sentencing, and that never happened. This comes up for the first time on habeas corpus, right after a case comes out about 17 years. I've thought of that. I've seen it in your brief, and I was wondering about the fact that he did not raise it at the withdrawal of pleas or at the time when he could have filed. What do we make of that absence? Is that a waiver of some sort? I'm troubled by that because I think you're absolutely right. I think the time to have raised it was when he left the courtroom, and he says to his lawyer, wait a minute, man, how much time have I got here? This is so different from what you told me. Let's try to go back and withdraw it, and then we'd have a different record. I don't remember seeing it in the brief, and I'm just wondering what we make of that. We had a really odd situation here where appellate counsel was representing him in the district court and then put himself on the stand at the end, and he explains that it just didn't come up until we were going through the record on appeal, and suddenly this issue popped up, so he filed an appeal, a habeas at the appellate level. It's the first time this ever comes up. It never goes before the trial court. Would it be a waiver on appeal? Absolutely. On habeas? When did he change lawyers? Siegel represented him at trial. Yes. I mean, there was no trial. Through the change of plea. Correct. And sentencing. There was a change of plea where he's given this advice such as this. He leaves the courtroom, and then if he wants to withdraw his plea, he can do so before or he can try to do so before sentencing. There are many, many meetings between the plea and the sentencing, because it's they're trying to argue for shorter and shorter time on this attempted murder, and so they're putting their sentencing case together and going through the probation report and seeing what they object to and don't object to before the sentencing, and then Siegel represents him at the sentencing hearing. And there's never any mention of withdrawing a plea for this advice or anything of that sort? Is there any reason why a sentence should not be pronounced? No, Your Honor. Okay. Thank you. Thank you very much. And I realize I've gone over my time. Does court want me to address that at the last question? We'll give you a minute if you would like to take it. Justice Kaczynski, the issue regarding the – there's no waiver in this case. As Mr. Placencia testified, he didn't realize that he had to do the full 35 years until after he'd been sentenced. And that was part of his testimony before the district court. The issue – he didn't realize the – he didn't understand the applicability of that section that reduced all his credits and he'd have to do his full 35 years. And that was never discussed with him at sentencing. The issue regarding at the plea, they said reduce custody credits. Well, that is really meaningless because it's not even accurate. He should get no custody credits, and he wasn't advised that. And truly, how is one who's 17 years old, uneducated, when his attorney is saying you're doing 17 years before you become eligible for parole, how does a person all of a sudden understand reduce custody credits? That should trigger something. Well, it didn't trigger anything in his attorney's mind. How would it trigger something in a 17-year-old? And how would he assume he understands everything now? Oh, I don't get any custody credits. I'm going to have to do my 35 years. There was nothing like that and nothing like that at sentencing that would say that. After the sentence is imposed, is there an opportunity to file a motion to withdraw the plea at that point? In terms of vacating the plea, his claim, that's exactly what it is. He is saying that his plea is now vulnerable. I have a habit of not answering the question. I'm sorry. It's a yes or no question. I don't know of a vehicle after you've been sentenced to vacate your plea other than claiming – I don't know. I don't believe you've been sentenced. The time to vacate your plea is beforehand. In state court – I don't know. I don't know state procedure. I think in federal court you can move to, in terms of the motion, to vacate your plea at any time. I mean, you lose for sure, but you can do it at any time. I don't know of a procedure you can do that in state court. Although the effect of filing a motion to vacate your sentence because of ineffective assistance of counsel is fundamentally the same motion because you're saying that you've been denied effective assistance of counsel. That would be the same claim that you would do if you had the motion to vacate your plea. I don't see a distinction between the two vehicles, and I don't know if the first vehicle is available to the person who's been sentenced. Your Honor, just to answer your question regarding historical – I believe historically that if before they changed credits, you were entitled to a half-time off. You could – if you were – you could get work credits while in custody, so you would do – for every day you did, you would get one off. It was not clear as to why Mr. Segal explained the historical perspective of murder and parole eligibility. It was never clear to anyone how he got to that point. But theoretically, before they reduced your credits, before violent felonies got 85 percent of the time, you could do one-for-one credits. He may have been thinking of that, but we don't know. We don't know. He went into a historical matrix. Okay. Thank you very much. Mr. Segal, stand for a minute.
judges: Kozinski, Fisher, Block